PREPARED FOOD PHOTOS, INC.,

        Plaintiff,

                              Case No. 22-cv-1141-pp

    v.

CURRIE & SONS LLC,

        Defendant.

### ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 6), GRANTING PLAINTIFF'S REQUEST FOR PERMANENT INJUNCTION AND SETTING HEARING TO DETERMINE DAMAGES

On September 29, 2022, plaintiff Prepared Food Photos, Inc. filed a complaint against Currie & Sons LLC seeking damages and an injunction for copyright infringement. Dkt. No. 1. Despite accepting service on October 1, 2022, dkt. no. 4, the defendant has not answered the complaint or otherwise appeared. On November 28, 2022, the plaintiff filed a request for entry of default, dkt. no. 5, and the clerk entered default the next day. On January 3, 2023, the plaintiff filed a motion for default judgment seeking an award of $23,976 plus costs of $457 and attorney's fees of $2,367.50. Dkt. Nos. 6; 6-1; 6-2.

### I. Entry of Default

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a) ("When a party

1

against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

Under Federal Rule of Civil Procedure 4(h), plaintiffs may serve a corporate defendant "in the manner prescribed by Rule 4(e)(1)." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) allows the plaintiffs to serve an individual using the methods allowed by state law in the state where the federal district is located. Fed. R. Civ. P. 4(e)(1). Wisconsin allows plaintiffs to personally serve an officer, director or managing agent of the limited liability company or by serving an agent authorized by appointment or law. Wis. Stat. §801.11(5)(a), (c). Under Wisconsin law, an LLC must maintain a registered agent under Wis. Stat. §§183.0115 (2019-20) and 183.0105 (2017-18).

In the motion for entry of default, the plaintiff said that it had served Currie & Sons, LLC d/b/a/ Garfield's 502 on October 7, 2022. Dkt. No. 5 at ¶2 (citing Dkt. No. 4). The plaintiff filed the affidavit of process server Stephen Majors, from First Legal Process of Wisconsin, who averred that he had served the summons and complaint on Currie & Sons, LLC d/b/a/ Garfield's 502 by delivering the summons and complaint to the registered agent, Jewel Currie, at 502 W. Garfield Avenue Upper, Milwaukee Wisconsin on October 1, 2022 at 9:27 a.m. Dkt. No. 4. The Wisconsin Department of Financial Institutions identifies Jewel Currie as the registered agent for Currie & Sons, LLC.

2

https://www.wdfi.org/apps/CorpSearch/Details.aspx?entityID=C062211&hash=547953444&searchFunctionID=d1bcc89e-4eb4-478492c915987a3aa295&type=Simple&q=C062211 (last visited Feb. 23, 2024).

The court concludes that the plaintiff has properly served the defendant, and that the defendant is aware of the lawsuit but has not answered or otherwise defended itself.

## II.    Plaintiff's Motion for Default Judgment (Dkt. No. 6)

After the entry of default, the plaintiff may move for default judgment under Rule 55(b). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). However, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." Id. (quoting In re Catt, 38 F.3d 789, 793 (7th Cir. 2004)). A district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Id. Rule 55(b)(2) allows the court to conduct this inquiry through hearings or referrals, if necessary, to determine the amount of damages. Fed. R. Civ. P. 55(b). "[J]udgment by default may not be entered without a hearing on damages unless 'the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" e360 Insight, 500 F.3d at 602 (quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)).

3

The plaintiff filed its motion for default judgment on January 3, 2023. Dkt. No. 6. At the end of the motion, after the signature block, the plaintiff's counsel certified that he had served a copy of the motion on the defendant "via U.S. Mail to: Currie & Sons, LLC d/b/a Garfield's 502, 502 Upper W Garfield Avenue, Milwaukee, WI 53212." Id. at 18. The court has not received from the defendant a response to that motion, and the defendant's deadline for responding expired over a year ago. Civil Local Rule 7(b) (E.D. Wis.). The court treats the plaintiff's motion for default judgment as unopposed and will consider the merits of the motion. Civil L.R. 7(d). Because the clerk has entered default against the defendant, the court accepts as true the well-pleaded allegations in the complaint. Quincy Bioscience, LLC v. Ellishbooks, 957 F.3d 725, 729 (7th Cir. 2020) (citing Wehrs v. Wells, 688 F.3d 886, 892 (7th Cir. 2012)).

A.      Allegations in the Complaint

The plaintiff "is in the business of licensing high-end, professional photographs for the food industry." Dkt. No. 1 at ¶6. The plaintiff operates a commercial website where it "offers a monthly subscription service which provides access to/license of tens of thousands of professional images." Id. at ¶7. The plaintiff "charge[s] its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a monthly fee of $999.00 for access to its library of professional photographs." Id. at ¶8. The plaintiff "relies on its recurring monthly subscription service such that Plaintiff can continue to maintain its impressive portfolio." Id. at ¶9.

4

The specific work at issue in this case is a photograph entitled "OnionRing001," which was taken by a professional photographer in 1999. Dkt. No. 1 at ¶11. "[OnionRing001] was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on August 5, 2016 and was assigned Registration No. VA 2-012-581." Id. at ¶12. Attached to the complaint is a "copy of the Certification of Registration pertaining to [OnionRing001]." Id. at ¶13; see also Dkt. No. 1-1.

The defendant holds itself out as the "premier neighborhood bar in Milwaukee," "provid[ing] an eclectic menu, variety of bar drinks, and live Jazz music." Dkt. No. 1 at ¶14. The defendant markets its business through its website, its social media and other forms of advertising. Id. at ¶15. Sometime after the plaintiff registered a copyright for OnionRing001, the defendant published the same photo on its website to market its business (more specifically, its onion rings). Id. at ¶¶16, 19. The plaintiff believes the "Defendant located a copy of [OnionRing001] on the internet and, rather than contact Plaintiff to secure a license, simply copied the [photo onto its website] for its own commercial use." Id. at ¶20. Attached to the complaint as "Exhibit B" is "a screenshot of Defendant's website, displaying the copyrighted [OnionRing001 photo]." Id. at ¶17; see also Dkt. No. 1-2. The defendant "is not and has never been licensed to use or display . . . [OnionRing001]," and the defendant "never contacted Plaintiff to seek permission to use [OnionRing001]

5

in connection with its website, social media, print advertising, or for any other purpose." Dkt. No. 1 at ¶18.

The plaintiff "first discovered Defendant's unauthorized use/display of [OnionRing001] on October 25, 2019," after which, "Plaintiff notified Defendant in writing of such unauthorized use." Id. at ¶21. As of the date the plaintiff filed the complaint, the defendant had not responded to the notice, "thus necessitating the filing of this lawsuit to protect Plaintiff's rights with respect to [OnionRing001]." Id.

B.    Liability

"Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright" and the copyright owner may "institute an action for any infringement of that particular right." 17 U.S.C. §501(a)-(b). To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). The plaintiff argues that it has established both elements.

As to the first element, the plaintiff asserts that its certificate of copyright registration for OnionRing001 (which it attached to the complaint as "Exhibit A," dkt. no. 1-1) constitutes *prima facie* evidence that it holds a valid copyright over the OnionRing001 image. Dkt. No. 6 at 7 (citing 17 U.S.C. §410(c)); see also Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013) (holding that courts may consider documents attached to the complaint, which also are referenced in and relied on in the complaint, as "part of the complaint"). "Under

6

the Copyright Act, a certificate of registration obtained within five years of first publication establishes a presumption of ownership of a valid copyright." Graphic Design Mktg. v. Xtreme Enter., Inc., 772 F. Supp. 2d 1029, 1032 (E.D. Wis. 2011) (emphasis added) (citing 17 U.S.C. §410(c)). The plaintiff's registration certificate for OnionRing001 indicates that the photo originally was published in March 1999, dkt. no. 1-1 at 1, 5, and that the plaintiff obtained a certificate of registration from the Register of Copyrights on August 5, 2016— over *seventeen* years after OnionRing001 was first published, see dkt. nos. 1-1 at 1; 1 at ¶12. Where a plaintiff obtains a certificate of registration for a work more than five years after the work was first published, the "evidentiary weight to be accorded the certificate . . . shall be within the discretion of the court." Graphic Design, 772 F. Supp. 2d at 1032-33 (citing 17 U.S.C. §410(c); Yurman Design, Inc. v. Golden Treasures Imps., Inc., 275 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003); Telerate Sys., Inc. v. Caro, 689 F. Supp. 221, 227 n.7 (S.D.N.Y. 1988)). The court finds that the plaintiff's Certificate of Registration pertaining to OnionRing001, dkt. no. 1-1, is *prima facie* evidence of a valid copyright, even though the plaintiff obtained the certificate more than seventeen years after the photo was first published. The plaintiff has established the first element of its copyright infringement claim.

The second element of a copyright infringement claim requires the plaintiff to prove that the defendant "cop[ied] . . . constituent elements of the [copyrighted] work that are original." Design Basics, LLC v. Signature Constr., Inc., 994 F.3d 879, 887 (7th Cir. 2021) (quoting Feist, 499 U.S. at 361).

Attached to the complaint as "Exhibit B" is a screenshot of the defendant's website in which OnionRing001 is clearly displayed above the caption "Onion Rings, *Tease your taste buds with our golden, delicious Onion Rings*, $4." Dkt. No. 1-2 at 2. The photo of onion rings shown on the defendant's website is identical to the plaintiff's copyrighted OnionRing001 photo. Compare dkt. no. 1 at ¶11 (displaying OnionRing001), with dkt. no. 1-2 at 2 (displaying OnionRing001 as it appears on the defendant's website). The defendant included the OnionRing001 image on its website to promote its business, despite not having a subscription to the plaintiff's monthly service or the plaintiff's permission to use the OnionRing001 image. Id. at ¶18. These facts establish the proof-of-copying element of the plaintiff's copyright infringement claim. See Design Basics, 994 F.3d at 888 (explaining how plaintiffs satisfy the proof-of-copying element through "substantial similarity" and "improper appropriation"). The plaintiff has established the defendant's liability for copyright infringement.

  C. Damages

   Although the plaintiff has established the defendant's liability, the plaintiff "must still prove up damages." Domanus v. Lewicki, 742 F.3d 290, 303 (7th Cir. 2014) ("[W]hile a default judgment conclusively establishes liability, the victor must still prove up damages."). While "[a]ny allegations in the complaint relating to liability are considered true, . . . allegations going to damages are not." Id. (citing Wehrs, 688 F.3d at 892); see also e360 Insight, 500 F.3d at 602 ("[E]ven when a default judgment is warranted based on a

party's failure to defend, the allegations in the complaint are not deemed true.") (citations and quotations omitted). The court must conduct an inquiry to ascertain the plaintiff's damages with reasonable certainty. e360 Insight, 500 F.3d at 602. The court need not hold a hearing to determine damages if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." Id.

Under 17 U.S.C. §504(b), "a copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement." Alternatively, under 17 U.S.C. §504(c)(1), "the copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action . . . in a sum of not less than $750 or more than $30,000 as the court considers just." And "where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. §504(c)(2) (emphasis added). "[A] finding of willfulness is justified if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 511 (7th Cir.1994) (citation and quotation marks omitted). "The Court has the discretion to assess damages within these statutory limits." Prepared Food Photos, Inc. v. Hometown Publ'ns II Inc., Case No. 22-CV-652, 2023 WL 3439535, at *3 (E.D. Wis. May 12, 2023) (quoting Bell

9

v. Homeroute, Case No. 11-cv-766, 2014 WL 2745557, at *1 (S.D. Ind. June 17, 2014)); see also Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1194 (9th Cir. 2001) ("If statutory damages are elected, the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.").

The plaintiff "proffers that the cost for the contractual minimum 1-year license ($11,988) is the most accurate measure of [its] actual damages based on presently-known facts." Dkt. No. 6 at 11. The plaintiff has elected to pursue statutory damages in lieu of actual damages, arguing that "actual damages are insufficient due to Defendant's refusal to appear and participate in discovery." Id. Arguing that the defendant's infringement of OnionRing001 was willful, the plaintiff asks the court to award it statutory damages under 17 U.S.C. §504(c)(2) of double its claimed actual damages for a total of $23,976 ($11,988 x 2). Id. at 13-15. The plaintiff asserts that this figure will "compensate [it] for the damages suffered, . . . create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages, and . . . deter future violations of copyright law." Id. at 15. The plaintiff says that District Judge Donald M. Middlebooks of the Southern District of Florida found "the $11,988.00 license . . . to be a useful tool to properly calculate [its] damages" in Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, Case No. 21-82129-CV, 2022 U.S. Dist. LEXIS 205649, at *10 (S.D. Fla. Mar. 22, 2022).

Dkt. No. 6 at 11, 15. The plaintiff cites other cases in which courts found that the $11,988 figure was an appropriate starting point. Dkt. No. 6 at 12 (listing three cases filed in the Southern District of Florida and one case filed in the Northern District of Illinois).

Not all courts have agreed with the plaintiff's proposed methodology for calculating its statutory damages under 17 U.S.C. §504(c). District Judge J.P Stadtmueller of this court declined to adopt the plaintiff's proposed §504(c) statutory damages in Prepared Food Photos, Inc. v. Hometown Publications II, Inc., Case No. 22-CV-652, 2023 WL 3439535, at *3-4 (E.D. Wis. May 12, 2023). In that case, like this one, the plaintiff "calculated its actual damages amount based on the subscription fee that [the defendant] would have paid to Plaintiff if [the defendant] had used Plaintiff's photos pursuant to such a subscription during the relevant time period." Hometown, 2023 WL 3439535, at *3. The plaintiff argued that the most accurate measure of its actual damages was $35,964—a figure it "based on the cost of a subscription to [its] service at $999 per month with a mandatory 12-month minimum subscription term, . . . multiplied by three to account for each of the three years in which [the defendant] made at least one infringing use." Id. The plaintiff asked the court to double its proposed actual damages figure under 17 U.S.C §504(c)(2), arguing that the defendant's infringing conduct was willful. Id.

Judge Stadtmueller observed that "[c]alculating damages based on 'fair market value' is the preferred approach taken in cases involving the unauthorized use of copyrights[.]" Hometown, 2023 WL 3439535, at *3 (quoting

11

*Epic Sys. Corp. v. Attachmate Corp.*, Case No. 15-CV-179, 2016 WL 3703084, at *2 (W.D. Wis. July 8, 2016)). He recounted that "[i]n calculating the fair market value of an unauthorized use, courts will attempt to determine the price which a willing buyer and a willing seller would have agreed had they engaged in an ex-ante 'hypothetical negotiation' for the specific type of unlicensed use at issue." Id. (quoting Epic Systems, 2016 WL 3703084, at *2). Judge Stadtmueller was not convinced that the $35,964 figure was the "most accurate measure of [the plaintiff's] actual damages," nor that $35,964 "should be the starting point for calculating statutory damages." Id. at *3-4. He did not believe that the defendant, "in a hypothetical negotiation with Plaintiff," "surely would have elected to pay $35,964 for three years of access to use the seventeen photos at issue." Id. at *4. Nor was he convinced that the plaintiff had "demonstrated that [the defendant], as a dissolved business, would have in an arms-length negotiation accepted a $999 per-month licensing fee one time to access a single photo." Id.

Like Judge Stadtmueller, this court is not convinced that had the parties here engaged in an arms-length negotiation over the defendant's use of the plaintiff's OnionRing001 photo on their website, they surely would have settled on $11,988 as the price for that use. Put differently, the court is not persuaded that $11,988 accurately captures the plaintiff's actual damages or should be the starting point for calculating the plaintiff's statutory damages. The $11,988 figure represents the cost of a subscription to the plaintiff's service at $999 per month with a mandatory twelve-month subscription term. The plaintiff says

that it is not sure when the defendant first published OnionRing001 on its website, nor how long the photo remained on the defendant's website before the defendant removed the photo—or, rather, took down its website.[1] Dkt. No. 6 at 11-13. The plaintiff asserts that "[t]he screenshots [of the defendant's website] show that [OnionRing001] was published by Defendant at least as of October 25, 2019."[2] Id. at 11; see also id. ("[OnionRing 001] was published [on the defendant's website] as of October 2019 (when Plaintiff initially discovered the infringement)."). So, although the plaintiff concedes that it is not sure when the defendant's infringement began and how long it lasted, the plaintiff argues that displaying the OnionRing001 image on its website for even a single day would have, at minimum, cost the defendant the $11,988 price of an annual subscription to the plaintiff's photo library, and concludes that "the contractual minimum 1-year license ($11,988.00) is the most accurate measure of [its] actual damages based on presently known facts." Id.

---

[1] While the plaintiff alleges that the defendant advertises "its business primarily through its website https://www.garfields502.com," dkt. no. 1 at ¶15, that domain is not in operation as of this writing, and the plaintiff does not explain when it was taken down.

[2] The plaintiff's screenshot gives no indication of when the screenshot was taken. See Dkt. No. 1-2. Although the complaint alleges that "Plaintiff first discovered Defendant's unauthorized use/display of [OnionRing001] on October 25, *2019*," dkt. no. 1 at ¶21 (emphasis added), the declaration of Rebecca Jones (the plaintiff's secretary) attests that "Plaintiff first discovered Defendant's unauthorized use/display of the photograph at issue in October *2021*." Dkt. No. 6-1 at ¶18 (emphasis added); see also id. at ¶20 ("Plaintiff was reasonably unable to discover Defendant's improper use of the Work prior to October 2021."). The date on which the plaintiff discovered the defendant's infringement is immaterial to the plaintiff's claimed actual damages, but the inconsistency is notable.

13

But it is not clear whether the plaintiff generally offers customers access to its photo library at $999 per month for a minimum of twelve months or "exclusively" offers access on those terms. The motion for default judgment says:

> As set forth above and in the declaration of Rebecca Jones (Plaintiff's Secretary), Plaintiff exclusively operates on a subscription basis whereby it provides access to its library at $999.00 per month with a minimum twelve (12) month contract commitment (i.e., a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year).

Dkt. No. 6 at 9-10. But the complaint does not mention a twelve-month minimum, alleging only that the plaintiff "charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a monthly fee of $999.00 for access to its library of professional photographs." Dkt. No. 1 at ¶8. The plaintiff filed in support of its motion for default judgment a declaration from Rebecca Jones, the secretary of Prepared Food Photos, Inc. Dkt. No. 6-1. Jones avers that the plaintiff's "*standard* licensing terms require a minimum twelve (12) month licensing commitment," id. at ¶5 (emphasis added); that the plaintiff "*generally* operates on a subscription basis whereby it charges its clients . . . a monthly fee of, at minimum, $999.00 . . . for access to its library of professional photographs," id. at ¶4 (emphasis added); and that the plaintiff "*generally* does not license individual photographs," id. at ¶8 (emphasis added). The emphasized language implies that the plaintiff does not exclusively require twelve-month subscription periods, sometimes offers access to its catalogue at rates other than $999 per month and sometimes licenses individual photos in its catalogue.

14

The plaintiff's clients generally are "grocery stores, restaurant chains, food service companies." Dkt. No. 1 at ¶8. Jones reiterates that fact, dkt. no. 6-1 at ¶4, and adds that "the bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own 'end users' (i.e., grocery stores, meat/dairy sellers, etc.)." Id. at ¶7. It makes sense that the plaintiff generally would charge grocery stores, restaurant chains and food service companies (and the professional ad agencies doing the ad work for such businesses) $11,988 per year for access to its photo library. Such businesses likely are able to afford that rate, and such businesses might circulate not just one, but several of the plaintiff's photos online and via print advertising. But the defendant is not a grocery store, restaurant chain, food service company or professional ad agency. The defendant is a "neighborhood bar in Milwaukee," dkt. no. 1 at ¶14, whose corporate registration with the State of Wisconsin reflects a history of delinquency and reinstatement dating back to March 2005, see https://www.wdfi.org/apps/CorpSearch/Details. aspx?entityID=C062211&hash=547953444&searchFunctionID=d1bcc89e-4eb4-478492c915987a3aa295&type=Simple&q=C062211 (last visited Feb. 23, 2024). The defendant has been administratively dissolved twice—once in March 2010 and again in March 2019—and, as of January 1, 2024, is delinquent for a sixth time in its nearly twenty-year history. Id. The plaintiff does not allege that the defendant circulated many of the plaintiff's photos online and in print; it alleges that the defendant found one of the plaintiff's photos on the internet and copied it onto its website. Id. at ¶¶16, 20.

The court is not convinced that in October 2019 (when the plaintiff discovered the photo on the defendant's website), a small neighborhood bar in Milwaukee would have elected to pay the plaintiff $11,988 in a hypothetical negotiation over permission to use a single photo from the plaintiff's photo library on its website. See Hometown, 2023 WL 3439535, at *4 (citing Epic, 2016 WL 3703084, at *2). Because Jones's declaration conflicts with the plaintiff's claim that it "exclusively" offers access to its services at $999 per month with a twelve-month minimum, the court is not convinced that in an arms-length negotiation, the defendant would have demanded that the plaintiff pay $11,988 for use of a single photo.

The plaintiff cites several cases to support of its argument that the court should use the $11,988 figure as a starting point for calculating its damages. Dkt. No. 6 at 11-12. As Judge Stadtmueller said in Hometown, the fact that "[o]ther courts hav[e] adopted Plaintiff's method of damages calculation does not, by itself, persuade this Court that it should exercise its broad statutory discretion to bring about the same result." Hometown, 2023 WL 3439535, at *4 (citing 17 U.S.C. §504(c)(1)-(2); Bell, 2014 WL 2745557, at *1). Statutory damages under 17 U.S.C. §504(c) are appropriate here; the defendant's failure to participate in the case has impeded the plaintiff's access to information about the defendant's gross revenue or net profit attributable to its infringement, which would have aided the plaintiff in estimating its actual damages. 17 U.S.C. §504(b)-(c)(1). But the plaintiff's arguments and supporting materials do not persuade the court that $11,988 is the most accurate

16

measure of the plaintiff's actual damages, nor that $23,976.00 is a "just" damages award. Id. §504(c)(1).

Nor has the plaintiff demonstrated that the defendant's infringement was willful or in "reckless disregard" of the plaintiff's copyright over OnionRing001. As explained, to justify a statutory damages award of up to $150,000 under 17 U.S.C. §504(c)(2) for willful infringement, the plaintiff has the burden of proving that the defendant knew or recklessly disregarded the fact that using the plaintiff's work for its own commercial purposes was infringement. Wildlife Express, 18 F.3d at 511; Bell v. Merchants Bank of Ind., 456 F. Supp. 3d 1046, 1051 (S.D. Ind. 2020) ("[W]hile actual knowledge is not required for infringement to be willful, the defendants must know or have some reason to know that their actions constituted infringement."). As the plaintiff points out, the defendant's "failure to defend or otherwise participate in this lawsuit . . . supports a finding of willfulness." Hometown, 2023 WL 3439535, at *4 (citing Pawson v. Archetype Ltd., No. 08-CV-1163, 2009 WL 10682433, at *10 (C.D. Ill. Apr. 8, 2009)). But apart from emphasizing that the defendant didn't pay for the OnionRing001 image before displaying it on its website and that it has failed to appear, the plaintiff has not identified evidence suggesting that the defendant knew or should have known that its conduct constituted copyright infringement. The plaintiff's entire willfulness argument is: "Defendant's refusal to pay a reasonable licensing fee and refusal to participate in this lawsuit demonstrates that Defendant had actual knowledge, or at least acted with reckless disregard, of the fact that its conduct infringed upon Plaintiff's

17

exclusive copyrights in [OnionRing001]." Dkt. No. 6 at 8-9. Under that argument, every infringement would be willful.

In the case the plaintiff had before Judge Stadtmueller, the defendant was "a media company that design[ed], print[ed], and circulate[d] print advertisements for grocery stores." <u>Hometown</u>, 2023 WL 3439535, at *1. The defendant-advertiser used and circulated seventeen of the plaintiff's copyrighted photos in various advertisements over a nearly three-year period. <u>Id.</u> at *2-3. Judge Stadtmueller found that the defendant's "*repeated[]* use[] of Plaintiff's photos without permission for its own commercial gain support[ed] a finding that [the defendant] knew it was infringing another party's copyright and that its use was not accidental or de minimis." <u>Id.</u> (emphasis in original) (citing <u>Bell</u>, 456 F. Supp. 3d at 1051). He also added in a footnote that the defendant's "status as a media company that designs and circulates advertisements for a number of paying clients supports an inference that [it] is well aware of its obligation to obtain licenses or permission to use photos it does not own." <u>Id.</u> at *5 n.4. Here, again, the defendant is a neighborhood restaurant in Milwaukee that copied onto its website a single photo that it probably found "on the internet." Dkt. No. 1 at ¶¶14, 20. It is unclear how long the plaintiff's photo remained on the defendant's website, and the plaintiff has not alleged that the defendant reproduced the photo on its social media or in print advertisements. The plaintiff has not met its burden of demonstrating willful copyright infringement under 17 U.S.C. §504(c)(2).

The court cannot conclude that the plaintiff's statutory damages request of $23,976 is just or appropriate on the current record. The court will set a damages hearing, at which time the plaintiff will have the opportunity to present additional evidence to support its proposed statutory damages. After considering that evidence and any argument, the court will determine what damages are appropriate for the defendant's copyright infringement.

> D.    Attorneys' Fees and Costs

The plaintiff requests full costs and reasonable attorneys' fees from the defendant under 17 U.S.C. §505. Dkt. No. 6 at 16. The plaintiff seeks attorney's fees of $2,367.50 and costs of $457 for a total of $2,824.50. <u>Id.</u> It argues that such an award is appropriate given "the willful nature of Defendant's infringement and its failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs and fees." <u>Id.</u>

Section 505 states:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. §505. A prevailing party is not automatically entitled to fees under §505; "[t]he Copyright Act affords a district court discretion in awarding attorneys' fees to the prevailing party in an infringement case." <u>Sullivan v. Flora, Inc.</u>, 936 F.3d 562, 575 (7th Cir. 2019) (citing 17 U.S.C. §505) (emphasizing that the statue states "the court *in its discretion may* allow the recovery of full costs by or against a party"); <u>see also</u> <u>Fogerty v. Fantasy, Inc.</u>,

19

510 U.S. 517, 534 (1994) (stating that under §505, "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion").

The plaintiff's assertion that "[u]pon entry of a final judgment, Plaintiff is the prevailing party in this action" is correct, as far as it goes. Dkt. No. 6 at 16. But for the reasons discussed above the court will not adopt the plaintiff's proposed damages figure. Because the court is giving the plaintiff the chance to support its damages figure at a hearing, the court also will reserve for the hearing a determination on the appropriate award of costs and attorney's fees. At the hearing, the plaintiff should be prepared to explain why its proposed fees and costs are appropriate.

E.    Permanent Injunction

Finally, the plaintiff asks the court to issue a permanent injunction prohibiting the defendant from infringing the plaintiff's copyrights or continuing to display, transfer, advertise, reproduce or otherwise market any works derived or copied from OnionRing001. Dkt. No. 1 at 7. The plaintiff asks for the following relief:

> [A] permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, prohibiting it from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

20

Dkt. No. 6 at 17–18; see also Dkt. No. 1 at ¶34 ("Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.").

Section 502 of the Copyright Act provides that courts "having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a). This court has jurisdiction over the case under 28 U.S.C. §§1331 and 1338(a). The court finds that the defendant's infringing conduct has caused the plaintiff irreparable injury by impairing the market value of the plaintiff's work; that the defendant's conduct will continue to cause such harm if left unaddressed; and that the plaintiff has no adequate remedy at law. The court will grant the plaintiff's requested permanent injunction.

In a separate order, the court will issue a permanent injunction prohibiting the defendant from infringing the plaintiff's copyrights or continuing to display, transfer, advertise, reproduce or otherwise market any works derived or copied from OnionRing001.

III.    **Conclusion**

The court **GRANTS** the plaintiff's motion for default judgment. Dkt. No. 6. The court **ORDERS** that the parties must appear for a damages hearing on **May 24, 2024 at 2:00 PM** (Central Time) in Courtroom 222 of the U.S. Courthouse and Federal Building at 517 E. Wisconsin Ave., Milwaukee, WI 53202.

The court **GRANTS** the plaintiff's request for injunctive relief. Dkt. No. 6. The court will issue a separate injunction in compliance with Federal Rule of Civil Procedure 65(d).

Dated in Milwaukee, Wisconsin this 31st day of March, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**